434 So.2d 1078 (1983)
Sharon Scholl, former wife of Richard L. HILL
v.
Richard L. HILL.
TUTORSHIP OF Belinda M. PERRET and Morry J. Perret, Jr.
Nos. 82-C-2819, 83-C-0050.
Supreme Court of Louisiana.
June 27, 1983.
*1079 James T. Flanagan, Mollere, Flanagan & Arceneaux; Metairie, for defendant-applicant.
James DeSonier, Metairie, for plaintiff-appellee.
BLANCHE, Justice.
In each of these cases, the trial court set the fees for the notary and two appraisers who were appointed by the court to assist in the taking of an inventory. Both cases were appealed on the basis that the trial court abused its discretion in setting the fees. In the suit entitled "Sharon Scholl v. Richard Hill" (hereinafter referred to as the "Hill case"), the court of appeal, 433 So.2d 1069, upheld the trial court's fee awards. In the case entitled "Tutorship of Belinda Perret and Morry Perret, Jr." (hereinafter referred to as the "Perret case"), the appellate court, 434 So.2d 95, found that the notary and appraisers fees fixed by the trial court were excessive. Although the court of appeal reduced the amount of the fees, the petitioner still maintains that the fees are excessive in light of the evidence. Both cases arise out of the Twenty-Fourth Judicial District Court, Parish of Jefferson, and while we examine the facts of each case separately, they are consolidated for purposes of review by this Court. We affirm the decision reached by the court of appeal in the Hill case. We amend and affirm as amended the court of appeal's decision in the Perret case.
HILL CASE
Sharon Scholl was divorced from her husband, Richard Hill, by judgment rendered October 31, 1979. On January 13, 1981, Scholl petitioned the court for a partition of the former community and prayed that an inventory be taken of the property which she now owned in indivision with Hill. The trial court appointed a notary and two appraisers to inventory the property. On May 8, 1981, the inventory was conducted. The proces verbal of the inventory subsequently filed by the notary listed a house on Rhone Drive, over one hundred movable items in another residence on Rhone Drive, several movables in storage at the Rheem Manufacturing Company and a profit sharing plan with a vested community interest. The appraisers estimated the total value of the inventory to be $197,115.92.
Richard Hill opposed the homologation of the inventory on the ground that several of the appraised figures were unreasonable and not based upon their fair market value. He further objected to the fees requested by the notary and the appraisers.
In order to obtain their fees, the notary and appraisers filed a rule to show cause why they should not be paid for their services in accordance with the rules of the 24th Judicial District Court. Rule 13, § 8 of the 24th JDC provides:
In any case in which an inventory is requested, the notary filing said inventory shall be paid 2% of the total value of the inventory; the appraisers shall each be paid ½ of 1% of the total value of the inventory.
Hence, the notary and appraisers sought compensation for their services in the amounts of $3,942.32 and $1,971.16 ($985.58 each), respectively.
*1080 No evidence was presented at the hearing on the rule to show cause. The trial court awarded a fee which was less than the percentages mandated by the court rule. The notary was awarded a fee of $2,500 and the appraisers were each awarded a fee of $750.[1] The court of appeal found no abuse of the trial court's discretion in setting the fees.
PERRET CASE
Betty and Morry Perret, Sr. were married on April 3, 1964. Two children were born of that marriage, Belinda Perret in 1968 and Morry Perret, Jr. in 1972. On December 23, 1977, Morry Perret, Sr. was killed in an explosion at the Continental Grain Company. Betty Perret petitioned the court on April 26, 1978 to be confirmed as the natural tutrix of her two minor children. In that petition, she requested that a notary be appointed by the court to inventory the children's property. The court did appoint a notary (David Alfortish) and two appraisers.
On December 19, 1978, Alfortish filed the inventory of the children's property. The inventory listed five items: (1) an undivided one-half interest in a lot and home located at 1315 West Drive in Westwego, Louisiana (the children's interest valued at $17,000); (2) an undivided one-half interest in the furnishings in that home (children's interest$500); (3) an undivided one-half interest in a car (children's interest$250); (4) an undivided one-half interest in a truck (children's interest$375); (5) children's interest in a suit filed by Betty Perret on behalf of her children to recover damages for the wrongful death of Morry Perret, Sr.value $1,000,000. The wrongful death action was later compromised, and the children received a combined settlement figure of $127,000. Consequently, Alfortish filed an amended inventory which only changed the value of the children's interest in the wrongful death suit from $1,000,000 to $127,000. The total value of this amended inventory (the sum of the five items) was listed as $145,125.
On April 10, 1981, Alfortish, the notary, filed a rule to show cause why Betty Perret should not compensate him in the amount of $2,902.50 (2% of $145,125.) for the services he rendered and why she should not pay each of the appraisers a fee of $725.63 (½ of 1% of $145,125.).
At the hearing on the rule, only two witnesses testified. Alfortish called Guy Olano to testify. Olano was accepted by the court as an expert in the taking of inventories in Jefferson Parish and the compensation of the notaries for the taking of those inventories. He testified that it was customary in Jefferson Parish for the court-appointed notary to charge for his services a fee in the amount of 2% of the gross inventory. The other witness who testified at the hearing was Alfortish himself. Alfortish testified on his own behalf concerning the steps he took in compiling the inventory. He stated that after he was appointed by the court, he drove with the two appraisers to the house located at 1315 West Drive. Due to the fact that no one was present in the residence, they could only study the exterior of the home. However, Betty Perret's attorney was able to furnish Alfortish a list of the property owned by the children. Perret's attorney also was able to suggest values to be placed on the property items. Alfortish testified that he examined the list of property items with the appraisers, found the values suggested by Betty Perret's attorney to be reasonable and included those values in the inventory. Alfortish further testified that when he learned of the compromise of the wrongful death action, he filed an amended inventory so as to include the settlement figure in the inventory of children's property. On cross-examination, Alfortish was willing to concede that he spent a total of twelve hours to complete his duties concerning the inventory. In addition, he stated that he usually charged $75 per hour for his services.
*1081 The trial judge awarded the notary and appraisers the fees they requested ($2,902.50 for the notary; $725.63 for each appraiser). In his oral reasons for judgment, the judge noted that as a general rule in Jefferson Parish, the notary charged a fee in the amount of 2% of the inventory value and each appraiser charged a fee of ½ of 1% of the inventory value. The judge found that these fees were reasonable under the circumstances of this case. The court of appeal held that the fees fixed by the trial court were high. Accordingly, it reduced the fees to $2,000 for the notary and $500 for each appraiser. The court of appeal apparently based those figures on the work performed by the notary and appraisers, but gave no reasons to support the fees it awarded other than the fact that it carefully reviewed the record.
Under La.R.S. 9:1423, the trial court is charged with the duty to fix the fees of notaries and appraisers appointed by the court to assist in the taking of inventories.[2] The trial court is accorded much discretion in fixing the notary's and appraisers' fees.[3] However, this Court will not hesitate to overturn the trial court's fee awards if we find the court abused its discretion in setting the fees.
Both Richard Hill and Betty Perret contend that the lower court abused their discretion in fixing the fees of the notary and appraisers. For purposes of clarity, we examine and resolve each case independently.
HILL CASE
Richard Hill initially argues that La. R.S. 9:1423 requires that the same judge who appoints the notary and appraisers must set their fees. Hill contends that Judge Karno violated La.R.S. 9:1423 in this case by fixing the fees, for he was not the judge who appointed the notary and appraisers. Judge Eason made the appointments. We find this argument to be without merit. The statute provides that the "court" which appoints the notary and appraisers shall fix the fees. Both Karno and Eason were judges in Division "K" of the 24th JDC. Consequently, the same "court" did appoint the notary and appraisers and subsequently set their fees.
The petitioner next argues that the trial judge erred in fixing the fees, for there was no evidence in the record to show the value of the services rendered by the notary and appraisers. We find no merit in this contention. The services were rendered under the eyes of the court. The notary and appraisers were appointed by the court to assist in the taking of the inventory. A proces verbal of the inventory was subsequently filed by the notary. While evidence concerning the value of the services would have been helpful, the trial judge was fully able to draw on his experience and adjudge the value of the services of the notary and appraisers without the benefit of such evidence. See Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (La.1956); Nash v. LaFontaine, 407 So.2d 783 (La.App. 4th Cir.1981); Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981); Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir.1975); Travelers Insurance Co. v. Jenkins, 285 So.2d 839 (La.App. 1st Cir.1973).
Hill further contends that the trial court erred in relying upon Rule 13, § 8 of the 24th JDC, for that rule is arbitrary and unreasonable. We need not address the reasonableness of the court rule. The trial judge obviously did not follow the rule in setting the fees of the notary and appraisers because the fees were fixed at an amount which was less than the 2% and 1% fees mandated by the court rule. Moreover, we do not find that the judge abused his discretion in fixing the fees. The inventory listed over one hundred movables in a residence as well as various movables in *1082 storage at the Rheem Manufacturing Company. Also listed was the matrimonial domicile itself and a profit sharing plan. Under these circumstances, the fee of $2,500 for the notary and $750 for each appraiser were reasonable. Accordingly, we affirm the decision of the court of appeal.
PERRET CASE
Betty Perret contends that the court of appeal abused its discretion in setting the fees for the notary and appraisers, for the fees are excessive in light of the evidence adduced at the hearing to set the fees.
Under our statutory scheme, when the court orders an inventory, it appoints a notary who, in turn, appoints two competent appraisers to assist him. See La.C.C.P. arts. 3131-2. The statutes do not require that the parties in the proceeding approve the court appointments nor does the law envision a contract for fees between the notary and the parties. The same body which appoints the notary and appraisers, the trial court, is given the authority to set fees and order the parties to the litigation to pay such fees as costs. Under these circumstances, the court is constrained to fix fees which are reasonable. To determine reasonable fees for the notary and appraisers, the court should consider many factors such as (1) the time and labor of the notary and appraisers, (2) the value of the inventory, (3) the number of property items to be inventoried, (4) the fee customarily charged in the locality for similar services, and (5) the experience, reputation and ability of the notary and appraisers.
Applying these factors to the present case, we find that the fees set by the court of appeal are unreasonable. According to the notary's testimony, he drove with the appraisers to the site of inventory on only one occasion. At that time, he observed the outside of the residence. The list of property items and the suggested value of those items was furnished by Mrs. Perret's attorney. By his own admission, the notary spent a total of twelve hours to complete the inventory. The inventory is valued at $145,125, but there are only five property items listed in the proces verbal. One of these items is the children's interest in a court settlement of $127,000. An expert testified that the customary fee in Jefferson Parish was in the amount of 2% of the total value of the inventory for the notary and 1% of the inventory value to be divided among the appraisers. The appraisers and the notary do not assert that they are especially skilled or experienced in the field of taking inventories. Given these circumstances, we hold that the fee of $2,000 awarded to the notary and the fees of $500 to each appraiser are excessive. We reduce the fees to $1,000 for the notary and $250 for each appraiser.
We also find merit in the petitioner's contention that legal interest should run from the date of final judgment. The court of appeal held that legal interest was due from the date of the trial court's judgment. La.C.C. art. 1938 provides that all debts shall bear interest "from the time they become due, unless otherwise stipulated." On the date of final judgment, the debt became certain and liquidated.
Finally, we hold that the court of appeal abused its discretion assessing court costs to Betty Perret. It is inequitable to assess the petitioner court costs where the notary and appraisers caused the suit by demanding unreasonable fees. See La.C. C.P. art. 1920.

DECREE
The decision of the court of appeal in the Hill case is affirmed and costs are assessed to the appellant. The court of appeal's decision in the Perret case is amended to reduce the fee awarded to the notary to $1,000 and to reduce the fee awarded to each appraiser to $250. In the Perret case, costs are assessed to the appellee. In both the Perret and Hill cases, legal interest shall run from the date of final judgment.
LEMMON, J., dissents and assigns reasons.
*1083 LEMMON, Justice, dissenting.
I would remand the cases to the trial court for an evidentiary hearing on the value of the notary's and appraisers' services and for the fixing of their fees without regard to the court rule. The fee based solely and primarily on the total value of the inventory is unreasonable and illegal, although the amount involved may be one of the factors considered in fixing the fee.
NOTES
[1] There is no record of the hearing on the rule to set fees. The trial judge did not hand down written reasons for his ruling.
[2] La.R.S. 9:1423 provides:

"The fees allowed to experts, notary publics and appraisers appointed to assist in taking inventories of successions, tutorships, interdictions, and other proceedings requiring the taking of inventories, shall be fixed by the court appointing such experts, notary publics and appraisers, and shall be taxed as costs in those proceedings in which the taking of an inventory is required."
[3] La.R.S. 9:1423 is silent both as to the method by which the fees are to be determined and as to the amount of the fees to be set.